

FILED
MAY 20 2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL POTTS and JAMIKO REI BELL,<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY; CARMAX AUTO SUPERSTORES CALIFORNIA LLC; and DOES 1 through 10,<br><br>Defendants. | Case No.: 3:21-cv-00256-BEN-BGS<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO REMAND AND**<br><br>**(2) GRANTING MOTIONS TO DISMISS**<br><br>[ECF Nos. 4, 5, 10, 11] |

Plaintiffs Rachel Potts and Jamiko Rei Bell (collectively, "Plaintiffs") are suing Defendants Ford Motor Company ("Ford"), CarMax Auto Superstores California LLC ("CarMax", and when referred to collectively with Ford, "Defendants"), and ten unnamed defendants for state law violations alleging (1) breach of an express warranty, Cal. Civ. Code § 1793.2(d)(1) ("Section 1793.2(d)(1)"), (2) failure to complete repairs within thirty days, Cal. Civ. Code § 1793.2(b) ("Section 1793.2(b)"), (3) breach of the implied warranty of merchantability, Cal. Civ. Code § 1791.1 ("Section 1791.1") and (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). *See generally* Compl., ECF No. 1-2. The case was originally filed in the San Diego Superior Court for the State of California. *See id.* On February 10, 2021,

1

Ford removed the case to this Court. Notice of Removal ("NOR"), ECF No. 1. CarMax consented to removal. *See id.*, ¶ 7.

Thereafter, both Defendants filed motions to dismiss. *See* Defendant Ford's Motion to Dismiss, ECF No. 4; Defendant CarMax's Motion to Dismiss, ECF No. 5,[1] and Mot., ECF No. 10. In their motions to dismiss, Defendants also move to strike certain remedies sought by Plaintiffs. *See* Mot., ECF No. 4, 17-18; Mot.; *see also* ECF No. 10, 8-9. Plaintiffs opposed both motions to dismiss, ECF No. 12 (opposing Carmax's Motion to Dismiss); ECF No. 13 (opposing Ford's Motion to Dismiss), and filed a motion to remand, Mot., ECF No. 11. As set forth below, the motions to dismiss are **GRANTED** and the motion to remand is **DENIED**.

## I. BACKGROUND[2]

This is a Lemon Law case. On August 14, 2020, Plaintiffs jointly purchased or leased a 2019 Ford Mustang (the "Vehicle") from a CarMax Auto Superstore in California. Compl., ECF No. 1-2, ¶ 5. "Defendants"[3] gave Plaintiffs an express warranty for the Vehicle, agreeing to fix any defects that developed during the warranty period. Compl., ECF No. 1-2, ¶ 6. Plaintiffs did not attach a copy of the express warranty to the

---

[1] The docket reflects CarMax's Motion to Dismiss and Strike, ECF No. 5, is duplicative of and identical to the Motion to Dismiss and Strike filed by Ford, ECF No. 4. For convenience, the Court refers to both motions throughout as the "Motion" and refers to ECF No. 4.

[2] The following overview of the facts is drawn from Plaintiffs' Complaint, ECF No. 1-2, which the Court assumes true in analyzing the motions to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court is not making factual findings.

[3] The complaint alleges that "Defendants gave Plaintiffs an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time." Compl., ECF No. 1-2 at ¶ 6. The use of both the plural and singular in this sentence makes it unclear whether both Defendants gave a warranty, pursuant to which only one defendant—although it is unclear which one—undertook the promise to preserve or maintain the utility or performance of the Vehicle, or whether the use of the singular was a typographical error.

2

complaint and do not specifically allege the warranty's terms, conditions, or duration. *See generally id.*

During the warranty period, the Vehicle developed nonconformities. Compl., ECF No. 1-2, ¶ 7. Though sparse on particulars, Plaintiffs allege the Vehicle would jerk into gear, had "a hard shift and/or a 'clunk' when shifting," suffered an "infotainment unit" failure, and had a "non-operative back up camera." *Id.* Plaintiffs allege these defects "substantially impair the use, value, or safety of the Vehicle." *Id.*

On an unknown number of occasions and on unknown dates, Plaintiffs took the Vehicle to "Defendant" for service and repair. Compl., ECF No. 1-2, ¶ 8. "Defendant" was unable to service the Vehicle to fix the problems. *Id.* Here, again, it is unclear to whom Plaintiff refers.

Plaintiffs claim they suffered damages because of the failure to repair. Compl., ECF No. 1-2, ¶¶ 9-10. While not claiming a specific amount, Plaintiffs argue their actual damages exceed $25,000.00. *Id.* at ¶ 10. They further argue "Defendant's" failure to comply with its obligations under Section 1793.2 entitle Plaintiffs to a "civil penalty of two times Plaintiffs' actual damages." *Id.* at ¶ 11. Finally, Plaintiffs seek injunctive relief, disgorgement, restitution, and attorney's fees. *Id.* at ¶¶ 26-27.

## II. LEGAL STANDARDS

### A. Motion to Remand

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chi. v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 163 (1997). Thus, removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chi.*, 522 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Whether removal is proper is a statutory question. *See* 28 U.S.C. § 1441 *et seq.* The removal statutes are strictly construed, and removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Nev. v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012). The defendant seeking removal of an action from state court bears

3

the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). The district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").

### B. Motion to Dismiss

A dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on the lack of a cognizable legal theory or absence of sufficient facts to support a cognizable or plausible legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering a Rule 12(b)(6) motion, the Court "accept[s] as true facts alleged and draw[s] inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). A plaintiff must not merely allege conceivably unlawful conduct but must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a court dismisses a complaint, it may grant leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

### III. ANALYSIS

Before the Court are three motions: Plaintiffs' motion to remand and each Defendant's motion to dismiss. *See* Mot., ECF No. 11 (Plaintiffs' motion to remand);

Mot., ECF No. 4, (CarMax's motion to dismiss); and Mot., ECF No. 10 (Ford's motion to dismiss). "Generally, jurisdiction is a preliminary matter that should be resolved before all others." *Luna v. BMW of N. Am. LLC*, Case No. 17-cv-02067-BEN-KSC, 2018 WL 2328365, at *2 (S.D. Cal. May 22, 2018) (quoting *Leeson v. Merck & Co., Inc.*, Case No. S-05-2240-WBS-PAN, 2006 WL 3230047, *2 (E.D. Cal. Jan. 27, 2006)). This makes good sense because if the Court determines that it lacks subject matter jurisdiction, it is not competent to rule on any other matters in the case. Accordingly, the Court addresses the motion to remand first.

**A.  Motion to Remand**

Defendants removed this case pursuant to 28 U.S.C. § 1332. NOR, ECF No. 1, ¶ 10. That statute confers jurisdiction on the district courts "where the matter in controversy [1] exceeds the sum or value of $75,000, exclusive of interest and costs, and [2] is between . . . citizens of different States." 28 U.S.C. § 1332(a). In the motion to remand, Plaintiffs argue Defendants have failed to show that (1) complete diversity of citizenship exists between the parties and (2) the amount in controversy requirement has been met. Mot., ECF No. 11, 6-7. Plaintiffs therefore argue the case should be remanded to the San Diego Superior Court for the State of California.

**1.  Complete Diversity of Citizenship**

First, Plaintiffs argue Defendants have failed to prove complete diversity of citizenship exists between the parties. Mot., ECF No. 11-1, 17. Specifically, Plaintiffs suggest Defendants have failed to show Plaintiffs are citizens of California for diversity jurisdiction purposes and argue CarMax's evidence of its citizenship is based on inadmissible hearsay. *Id.*; *see also* Reply, ECF No. 20, 4.

"For a court to have diversity jurisdiction under 28 U.S.C. § 1332(a), the citizenship of each plaintiff must be diverse from the citizenship of each defendant." *Modiano v. BMW of N. Am. LLC*, Case No. 21-cv-00040-DMW-MDD, 2021 WL 973566, at *2 (S.D. Cal. Mar. 16, 2021) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). In the Notice of Removal, Ford alleged that for purposes of diversity

jurisdiction it is a citizen of Delaware and Michigan, and that CarMax is a citizen of Virginia. NOR, ECF No. 1, ¶¶ 23. While Plaintiffs do not challenge Ford's citizenship, they argue the evidence supporting CarMax's citizenship is based on inadmissible hearsay. Reply, ECF No. 20, 4. Even if Plaintiffs are correct about admissibility, the Court may consider inadmissible hearsay when evaluating a motion where it finds the content could be submitted in an admissible form at trial. *Cf. JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (allowing consideration of such hearsay when determining a motion for summary judgment). CarMax submitted copies of several documents filed with the California Secretary of State showing that CarMax is a Virginia limited liability company with its headquarters located in the Commonwealth of Virginia. Keeton Decl., ECF No. 17-1, Exs. 1-7. The Court finds this evidence sufficient to show CarMax is a citizen of Virginia for diversity jurisdiction purposes. Further, because Plaintiffs do not actually dispute CarMax's citizenship but rather only dispute whether the evidence supporting it is admissible, the Court notes that it may (and does) take judicial notice of CarMax's citizenship from publicly accessible records.[4] The remaining question, then, is Plaintiffs' citizenship.

In the Notice of Removal, Ford alleged that "[o]n information and belief, Plaintiffs are and were at the time of the filing of the Complaint citizens and residents of California residing in Menifee, California." ECF No. 1, ¶ 20. Moreover, in opposing the Motion to

---

[4] The Court notes that CarMax's citizenship is publicly accessible on the California Secretary of State's website. *See* https://businesssearch.sos.ca.gov/Document/Retrieve PDF?Id=201218810201-28789221. The California Corporations Code requires all business entities doing business in California to register with the California Secretary of State. *See* Cal. Corp. Code §§ 17708.01, *et seq.* The Court, *sua sponte*, takes judicial notice of these publicly accessible records, which indicate that CarMax's place of organization is Virginia. *See*, FED. R. EVID. 201; *see also L'Garde, Inc. v. Raytheon Space and Airborne Sys.*, 805 F. Supp. 2d 932, 937-38 (C.D. Cal. 2011) (taking judicial notice of records from the California Secretary of State website after noting that "information on government agency websites has often been treated as properly subject to judicial notice").

6

Remand, CarMax submitted what appears to be Plaintiffs' credit application for the Vehicle that lists Plaintiffs' address as Menifee, California. Frost Decl., ECF No. 17-3, Ex. 8. "While residence is not necessarily the same as domicile, the 'place where a person lives is taken to be his [or her] domicile until facts adduced establish the contrary.'" *Roehm v. Ford Motor Co.*, Case No. 18-CV-1278-JM-JMA, 2018 WL 4520542, at *2 (S.D. Cal. Sept. 21, 2018) (quoting *Anderson v. Watt*, 138 U.S. 694, 706 (1891)).

There are no facts to the contrary. Plaintiffs coyly evade addressing their own citizenship, instead arguing Defendants carry the burden of proving diversity of citizenship and that Defendants' evidence is inadmissible hearsay. Reply, ECF No. 20, 3-4. Where the unrebutted evidence shows Plaintiffs reside in California, the Court may treat it as "*prima facie* evidence of domicile and citizenship." *Kalasho v. BMW of N. Am. LLC*, Case No. 20-CV-1423-CAB-AHG, 2020 WL 5652275, at *2 (S.D. Cal. Sept. 23, 2020). The Court does so here. Ford appears to be a citizen of Delaware and Michigan, CarMax a resident of Virginia, and Plaintiffs' residents of California. Accordingly, the Court is satisfied Defendants have shown complete diversity of citizenship exists.

### 2. Amount in Controversy

Plaintiffs also allege the Court lacks diversity jurisdiction because there is less than $75,000.00 in controversy in this matter. Mot., ECF No. 11-1, 9. While Plaintiffs do not specify a total amount of damages in their complaint, they seek actual damages and restitution "in an amount according to proof" and "a civil penalty in the amount of two times Plaintiffs' actual damages" pursuant to California Civil Code Section 1794 ("Section 1794"). Compl., ECF No. 1-2, 9.

In removal cases asserting the Court's diversity jurisdiction, the defendant has the burden of establishing the amount in controversy requirement is satisfied. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Accordingly, Ford and CarMax must come forward with evidence that there is more than $75,000.00 in controversy here, exclusive of costs and interest.

7

Ford argues Plaintiffs bought the Vehicle for $34,318.08. NOR, ECF No. 1, ¶ 14. Thus, if the cost of the Vehicle were also the total amount in controversy the Court would lack jurisdiction. *See* 28 U.S.C. § 1332(a). However, Ford argues that because Plaintiffs also seek "a civil penalty in the amount of two times Plaintiffs' actual damages" pursuant to Section 1794, the actual total amount in controversy is over $102,954.24. Opp'n, ECF No. 18, 9-10. Plaintiffs respond that the Court should not include the potential civil penalty when determining the amount in controversy. Reply, ECF No. 20, 7.

Courts within this District have reached opposite conclusions on whether a civil penalty awarded pursuant to Section 1794 should be included in determining the "amount in controversy" for purposes of 28 U.S.C. § 1332(a). *Compare Modiano v. BMW of N. Am. LLC*, Case No. 21-cv-0040-DMS-MDD, 2021 WL 973566, at *3 (S.D. Cal. Mar. 16, 2021) (including Section 1794 civil penalties in the amount in controversy calculation) *and Luna v. BMW of N. Am. LLC*, Case No. 17-cv-2067-BEN-KSC, 2018 WL 2328365, at *4 (S.D. Cal. May 22, 2018) (same) *with Millan v. FCA US LLC*, Case No. 20-cv-0328-JM-MDD, 2020 WL 3604132, at *2 (S.D. Cal. Jul. 2, 2020) (granting motion to remand where the defendant did not provide proof of the likelihood of a civil penalty and collecting cases within this District splitting on this issue). The Court is also aware that counsel representing Plaintiffs and Ford have often been the litigants in these diverging cases. *See, e.g., Modiano*, 2021 WL 973566 *and Ronquillo v. BMW of N. Am. LLC*, Case No. 20-cv-1413-W-WVG, 2020 WL 6741317 (S.D. Cal. Nov. 17, 2020).

A lengthy, repetitive analysis of this issue is unnecessary here. It is sufficient to say that in this District there is not a settled view of whether a possible civil penalty under Section 1794 should be automatically included when analyzing the amount in controversy, or whether a defendant must argue specific facts that make a civil penalty more likely in a particular case. *Compare Modiano*, 2021 WL 973566, at *3 *with Millan*, 2020 WL 3604132, at *2. This Court previously took the view that Section 1794's "civil penalties are akin to punitive damages and ought to be treated the same for the purposes of this analysis." *Luna*, 2018 WL 2328365, at *3. Punitive damages, in turn, are

considered when determining the amount in controversy. *See id.* (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238 (1943)). It follows, therefore, that the civil penalties sought here should be included in the amount in controversy, just as they would be considered if they were punitive damages.

Considering the apparent cost of the Vehicle and a claimed civil penalty of twice that amount, the Court finds the amount in controversy exceeds $75,000.00 exclusive of costs and interest. Defendants have therefore shown both the complete diversity and amount in controversy requirements of 28 U.S.C. § 1332(a) have been met, and the motion to remand is **DENIED**. The Court now analyzes Defendants' motions to dismiss.

### B. Motions to Dismiss

Defendants argue the complaint should be dismissed in its entirety because the factual allegations supporting each claim are inadequate such that they do not plausibly state a claim for relief. The Court addresses each of Plaintiffs' four claims in turn.

#### 1. Violation of California Civil Code Section 1793.2(d)(1)

Plaintiffs first allege "Defendant" failed to comply with Section 1793.2(d)(1) by providing an express warranty for the Vehicle but then failing to (1) fix non-conformities within a reasonable time or (2) promptly replace the Vehicle. Compl., ECF No. 1-2, ¶ 6-7. Defendants argue this claim fails to allege the terms of any express warranty that was breached or plausibly explain how a breach occurred. Mot., ECF No. 4, 7-9; Mot. ECF No. 10, 4-5. They further argue the complaint fails to allege which of the Defendants provided the express warranty. Mot., ECF No. 4, 7; Mot. ECF No. 10, 5.

To prevail on a breach of express warranty claim, Plaintiffs must prove that "(1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element)." *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001).

9

Here, Plaintiffs allege that during the warranty period, the Vehicle developed nonconformities that resulted in "the Vehicle jerking into gear" and a "non-operative backup camera." Compl., ECF No. 1-2, ¶ 7. The Court finds these allegations plausibly state a substantial impairment of the use or safety of the Vehicle. *See Iqbal*, 556 U.S. at 678. However, Plaintiffs' allegations fail to meet the remaining elements of a Section 1793.2(d)(1) claim. First, Plaintiffs' allegations for this claim are made against "Defendant" – not against Defendant Ford, Defendant CarMax, or even "Defendants." *See* Compl., ECF No. 1-2, ¶ 6. Thus, it is unclear which Defendant may be liable for a breach of Section 1793.2(d)(1). Second, Plaintiffs merely make a conclusory allegation that "Defendant and its representatives in this state have been unable to service or repair the Vehicle to confirm with the applicable express warranties after a reasonable number of opportunities." *Id.* at ¶ 8. The Court finds that this, too, fails to plausibly state a claim for relief. *See Iqbal*, 556 U.S. at 678. While Plaintiffs need not prove their case at the pleadings stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to save a claim from dismissal. *Iqbal*, 556 U.S. at 678. Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' claim for violation of Section 1793.2(d)(1).

       **2.    Violation of California Civil Code Section 1793.2(b)**

Plaintiffs' second claim alleges Defendants violated Section 1793.2(b) by failing to repair defects covered by warranty within thirty days. Compl., ECF No. 1-2, ¶¶ 14-18. Both Ford and CarMax generally argue this claim fails to plausibly allege a violation of Section 1793.2(b). *See* Mot., ECF No. 4, 12-14; Mot., ECF No. 10, 4-5. Among other defects in the claim, both Defendants specifically argue that the claim fails to allege that Plaintiffs actually presented the Vehicle at one of their service centers for repair on any occasion. *See* Mot., ECF No. 4, 13; Mot., ECF No. 10, 5-6.

Section 1793.2(b) requires that when goods must be serviced or repaired "because they do not conform with the applicable express warranties . . . the goods shall be serviced or repaired to conform to the applicable warranties within 30 days." Cal. Civ.

10

Code § 1793.2(b). Plaintiffs allege they "presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days." Compl., ECF No. 1-2, ¶ 15. Far from plausibly alleging a claim, this allegation is simply another recital of the elements of the cause of action. *See Iqbal*, 556 U.S. at 678. Plaintiffs fail to allege (1) which Defendant provided the warranty; (2) which Defendant the car was presented to for service; and (3) where, when, or how they presented the Vehicle for service. As pled, this claim is not plausible. Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' claim for violation of Section 1793.2(b).

### 3. Violation of California Civil Code Section 1791.1

Plaintiffs' third claim alleges Defendants violated Section 1791.1, California's implied warranty of merchantability. Compl., ECF No. 1-2, ¶¶ 19-23. Defendants argue Plaintiffs have failed to allege the Vehicle is unusable for its intended purpose. Mot., ECF No. 4, 14-16; Mot., ECF No. 10, 6. Ford also argues that to the extent this claim is brought against Ford, it fails as a matter of law because the Vehicle was purchased used, and the manufacturer is not liable for defects in used products. Mot., ECF No. 10, 6 (citing *Goldstein v. General Motors LLC*, 445 F. Supp. 3d 1000, 1018 (S.D. Cal. 2020)).

"An implied warranty of merchantability under [Section 1791.1] requires that consumer goods '[a]re fit for the ordinary purposes for which such goods are used.'" *Victorino v. FCA US LLC*, 326 F.R.D. 282, 290 (S.D. Cal. 2018) (quoting Cal. Civ. Code § 1791.1(a)). The implied warranty arises by operation of law and represents the minimum level of quality required for commercial goods. *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012). In California, courts "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability." *Isip v. Mercedes–Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007). "A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Id.*

11

There is no requirement the vehicle be inoperable. *Avedisian v. Mercedes–Benz USA, LLC*, 43 F. Supp. 3d 1071, 1079 (C.D. Cal. 2014).

Here, Plaintiffs make the cursory claim that the Vehicle jerked into gear, had hard shifting problems, and suffered a failure of the "infotainment unit." Compl., ECF No. 1-2, ¶ 7. The complaint contains no factual allegations about how long these problems lasted or what actual effect the problems had on operation of the Vehicle. *See Avedisian*, 43 F. Supp. 3d at 1079. Instead, the complaint is merely a threadbare recitation of the elements of the cause of action. *See* Compl., ECF No. 1-2, ¶¶ 21-22. For example, the complaint contains form language alleging "the Vehicle . . . does not conform to the promises or affirmations of fact made on the container or label," *id.* at ¶ 22, even though there is no suggestion the Vehicle was purchased in a labeled container. As discussed in the preceding claims, this fails to meet the pleading standard in federal court. *See Iqbal*, 556 U.S. at 678.

In addition to the factual infirmities discussed above, Ford argues Plaintiffs cannot maintain an implied warranty claim against it because, as a manufacturer, Ford is immune from such claims involving the purchase of a used vehicle. Mot., ECF No. 10-1, 6. Section 1791.1 "extends to 'used goods,' but '[i]t shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller).'" *Goldstein*, 445 F. Supp. 3d at 1018 (citing Cal. Civ. Code § 1795.5(a)). Accordingly, "[c]ourts routinely dismiss implied warranty claims for used cars that are directed at the manufacturer." *Id.* (citations omitted). Plaintiffs attempt to circumvent the clear statutory language by citing an inapposite case where the vehicle manufacturer also acted in the capacity of a retail dealer. Opp'n, ECF No. 13, 5-6 (citing *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340 (2019), *review denied* (Mar. 11, 2020). Here, however, there is no suggestion that CarMax is Ford's retail arm. While the Court is inclined to dismiss this claim with prejudice with respect to Ford, Plaintiffs may be able to plausibly establish a relationship between Defendants on an amended pleading.

Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' claim for violation of Section 1791.1. However, because Plaintiffs may be able to plead a relationship between Ford and CarMax that shows CarMax is a retail dealer for Ford, the manufacturer, the claim is dismissed without prejudice.

### 4. Violation of California Business & Professions Code Section 17200, *et seq.*

Plaintiffs finally allege Defendants violated the UCL through the statutory breaches alleged in their first three claims. Compl., ECF No. 1-2, ¶¶ 24-26. This claim therefore appears to allege a violation of the UCL's "unlawful" prong.

"With respect to the UCL's "unlawful" prong, [a] Court must consider whether [Plaintiffs allege] an unlawful business practice, *i.e.*, anything that can be called a business practice that is forbidden by law." *In re Outlaw Laboratory, LLP*, 463 F. Supp. 3d. 1068, 1089 (S.D. Cal. 2020). "Any federal, state or local law can serve as a predicate for an unlawful business practice action." *Id.* at 1089-90. "However, a UCL claim must identify the particular section of the statute that was violated and must describe with reasonable particularity the facts supporting the violation." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (internal quotation marks and citations omitted). Put simply, Plaintiffs' claim fails to do so here.

Additionally, the remedies for violation of the UCL are limited to injunctive relief and restitution—a plaintiff may not recover monetary damages. *Chambers v. Whirlpool Corp.*, No. 16-56666, -- F.3d --, 2020 WL 6578223, at *7 (9th Cir. Nov. 10, 2020); *Cortez v. Purolater Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000). While Plaintiffs' complaint contends that "injunctive relief and restitution . . . is appropriate," Compl., ECF No. 1-2, ¶ 26, they fail to allege an identifiable interest in the money they seek from each party. California's UCL "'operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice' to require that restitution 'must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be

13

supported by evidence.'" *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1077 (S.D. Cal. 2019). For example, if Plaintiffs purchased the car from CarMax, and CarMax has no relation to Ford, then, Plaintiff would have no identifiable interest in restitution from Ford.

The Court has found each of Plaintiffs' first three claims fail to plausibly state a claim for relief under the respective statutes. It follows that this claim for "unlawful" conduct also fails because the underlying "unlawful" conduct is not adequately pled. Accordingly, Court **GRANTS** Defendants' motions to dismiss Plaintiffs' UCL claim.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows: Plaintiffs' Motion to Remand (ECF No. 11) is **DENIED**. Defendant Ford Motor Company's Motion to Dismiss (ECF No. 10) is **GRANTED**. Defendant CarMax Auto Superstores California's Motions to Dismiss (ECF Nos. 4 and 5) is **GRANTED**. Plaintiffs may file a First Amended Complaint within fourteen (14) days that cures the pleading deficiencies identified in this Order. Plaintiff may not add additional claims or parties without seeking leave from the Court. If Plaintiffs fail to cure the deficiencies outlined by the Court, the Court may dismiss this matter *with prejudice.*

**IT IS SO ORDERED.**

Dated: May __, 2021

HON. ROGER T. BENITEZ
United States District Judge

---

[5] Because the Court grants Defendants' motions to dismiss, it does not reach the portion of their respective motions that ask the Court to strike certain remedies sought in the complaint. However, because the Court grants Plaintiffs leave to amend, it notes that certain equitable remedies sought in the complaint may be unavailable in federal court. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also* Ruth Dapper, Esq., Bryce Young, Esq., *Sonner v. Premier Nutrition Corp. Federal Common Law's Limitation of California UCL and CLRA Equitable Restitution*, 96 Notre Dame L. Rev. Reflection 74 (2021) (providing a thorough comment on the Ninth Circuit's decision in *Sonner* and its implications for UCL claims in federal court).