FILED

JUL 2 2 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RACHEL POTTS, an individual;
JAMIKO REI BELL, an individual

Plaintiffs,

v.

FORD MOTOR COMPANY, a
Delaware corporation; CARMAX
AUTO SUPERSTORES
CALIFORNIA, LLC, a Virginia limited
liability company; and DOES 1 through
10,

Defendants.

Case No.: 3:21-cv-00256-BEN-BGS

**ORDER GRANTING-IN-PART
MOTION TO DISMISS**

**[ECF No. 24]**

Plaintiffs Rachel Potts and Jamiko Rei Bell (collectively, "Plaintiffs") are suing Defendants Ford Motor Company ("Ford"), CarMax Auto Superstores California, LLC ("CarMax", and when referred to collectively with Ford, "Defendants"), and ten unnamed defendants for state law violations. The Court previously granted Defendants' Motions to Dismiss without prejudice, allowing Plaintiffs leave to amend their complaint. Order, ECF No. 22. On June 3, 2021, Plaintiffs filed a First Amended Complaint ("FAC") alleging (1) breach of an express warranty, Cal. Civ. Code § 1793.2(d)(1) ("Section 1793.2(d)(1)"), (2) failure to complete repairs within thirty days, Cal. Civ. Code §

1

1   1793.2(b) ("Section 1793.2(b)"), (3) breach of the implied warranty of merchantability,

2   Cal. Civ. Code § 1791.1 ("Section 1791.1"), and (4) violation of California's Unfair

3   Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"). *See generally* FAC,

4   ECF No. 23. Defendant CarMax filed an Answer to the FAC. ECF No. 25. Defendant

5   Ford filed the Motion to Dismiss now before the Court. ECF No. 24. For the reasons set

6   forth below, the motion is **GRANTED-IN-PART**.

7   **I.    BACKGROUND[1]**

8       This is a Lemon Law case. On August 14, 2020, Plaintiffs jointly purchased a

9   2019 Ford Mustang (the "Vehicle") from a CarMax Auto Superstore in California. FAC,

10  ECF No. 23, ¶ 7. Plaintiffs allege CarMax provided them an express warranty for the

11  Vehicle, agreeing to fix any defects that developed during the warranty period. *Id.* at ¶ 9.

12  They also allege that when Ford sold the Vehicle as new, it provided a five year sixty-

13  thousand-mile warranty that still covered the Vehicle. *Id.* At ¶ 8.

14      Only three weeks after Plaintiffs purchased the Vehicle, during a period covered by

15  both warranties, the Vehicle developed nonconformities. FAC, ECF No. 23, ¶¶ 7-10.

16  Plaintiffs allege that, among other infirmities, the Vehicle would jerk into gear and had a

17  transmission malfunction causing the Vehicle not to move "while on public roadways

18  despite attempting to accelerate." *Id.* at ¶ 10. Plaintiffs allege these defects

19  "substantially impair the use, value, or safety of the Vehicle." *Id.*

20      Plaintiffs immediately reported the defects to CarMax but were told the Vehicle

21  could not be serviced for three weeks. FAC, ECF No. 23, ¶ 11. On September 25, 2020,

22  Plaintiffs took the Vehicle into a CarMax authorized repair facility. *Id.* The Vehicle

23  remained there over the weekend and was released to Plaintiffs the following Monday.

24  *Id.* Unfortunately, the repairs did not take. *Id.* Plaintiffs returned to the repair facility

25

26

27  [1]    The following overview of the facts is drawn from Plaintiffs' FAC, ECF No. 23,
    which the Court assumes true in analyzing the motions to dismiss. *Erickson v. Pardus*,
28  551 U.S. 89, 94 (2007). The Court is not making factual findings.

2

1   that same day to allow the repair facility to try again. *Id.*

2         Several days passed without resolution when the repair facility finally realized the

3   Vehicle was still under Ford's initial warranty. FAC, ECF No. 23, ¶ 12. Upon learning

4   Ford's warranty still covered the Vehicle, the repair facility refused additional service

5   and delivered the Vehicle to Ford's representative, Fritts Ford, on October 12, 2020. *Id.*

6   at ¶ 12. Fritts Ford then attempted to repair the Vehicle. *Id.* Plaintiff alleges that

7   CarMax and Ford kept the Vehicle for twenty to twenty-five days, though Ford only had

8   the Vehicle for approximately eight days. *Id.*

9         In December 2020, Plaintiffs again brought the Vehicle to CarMax for repairs.

10   FAC, ECF No. 23, ¶ 13. Once again, CarMax's repair facility delivered the Vehicle to a

11   Ford dealership for repair pursuant to Ford's initial warranty. *Id.* This repair period

12   lasted approximately fourteen days. *Id.*

13         Plaintiffs claim they suffered damages because of the failure to repair. FAC, ECF

14   No. 23, ¶¶ 16. While not claiming a specific amount, Plaintiffs argue their actual

15   damages exceed $25,000.00. *Id.* Plaintiffs also seek injunctive relief, disgorgement,

16   restitution, and attorney's fees. *Id.* at ¶ 47. However, despite the Court's admonishment

17   in its previous Order, the FAC is devoid of any details stating why money damages

18   would be inadequate in this case.

19   **II.   LEGAL STANDARD**

20         A dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be

21   based on the lack of a cognizable legal theory or absence of sufficient facts to support a

22   cognizable or plausible legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d

23   1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When

24   considering a Rule 12(b)(6) motion, the Court "accept[s] as true facts alleged and draw[s]

25   inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto*

26   *Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). A plaintiff must not merely allege

27   conceivably unlawful conduct but must allege "enough facts to state a claim to relief that

28   is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a court dismisses a complaint, it may grant leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## III.   ANALYSIS

Ford argues each claim asserted against it in the FAC should be dismissed. The Court addresses each of Plaintiffs' four claims against Ford in turn.

### A.   Violation of California Civil Code Section 1793.2(d)(1)

Plaintiffs first allege Defendants gave them an express written warranty, and during that warranty period, a defect developed that both Ford and CarMax failed to timely repair. FAC, ECF No. 23, ¶¶ 7-19. Ford argues this claim fails because Plaintiffs failed to (1) present the vehicle directly to Ford for repair and (2) allege the Vehicle was presented for warranty repairs pursuant to Ford's warranty. Mot., ECF No. 24-1, 4-7. The Court disagrees.

To prevail on a breach of express warranty claim, Plaintiffs must prove the following three elements:

> (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element).

*Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001).

Plaintiffs first allege that during the warranty period, the Vehicle developed nonconformities including a transmission malfunction that caused the Vehicle to become

inoperable on public roadways.  FAC, ECF No. 23, ¶ 10.  These allegations plausibly state a substantial impairment of the use or safety of the Vehicle.  *See Iqbal*, 556 U.S. at 678.

Second, Plaintiffs allege they "immediately reported the defects to Defendant CarMax" and brought the Vehicle to CarMax for repair in satisfaction of the second element.  FAC, ECF No. 23, ¶ 11.  However, in satisfaction of the third element, Plaintiffs also allege that CarMax was not able to repair the defect.  *See id*.  Plaintiffs then allege that once the CarMax repair facility learned the Vehicle was still under Ford's manufacturer warranty, they refused further repairs and delivered the Vehicle to a Ford dealership for repair.  *Id.* at ¶ 12.  Ford argues that because CarMax, and not Plaintiffs, delivered the Vehicle to a Ford dealership for service, they are immune from liability under Section 1793.2(d)(1).  In support, Ford argues the statute requires "the buyer" to deliver nonconforming goods to the manufacturer to impose liability when a repair is not made.  Mot., ECF No. 24, 4-5 (citing *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 807 (Cal. Ct. App. 2006)).  Ford demands too much of Plaintiffs here and contorts the statute's meaning.

Plaintiffs allege they brought the vehicle to CarMax, who in turn brought it to Ford, which attempted but failed to repair the Vehicle.  FAC, ECF No. 23, ¶¶ 11-13.  That is enough to satisfy the presentation element of Section 1793.2(d)(1).  *Cf. Robertson*, 144 Cal. App. 4th at 808 (explaining that "the purpose of the presentation element is to provide a reasonable opportunity to make the needed repairs").  Ford seems to argue that Plaintiffs, after dropping off the broken Vehicle at CarMax, should have picked it up themselves and taken it to a Ford dealer.  This minute, literal meaning would lead to "absurd consequences that the Legislature did not intend." *Robertson*, 144 Cal. App. 4th at 807.  Instead, the better reading of the FAC is that Plaintiffs gave Ford the opportunity to repair the Vehicle and Ford meaningfully undertook to repair it, thereby satisfying the presentation element of Section 1793.2(d)(1).

Finally, despite Ford's argument to the contrary, the FAC clearly alleges Plaintiffs

presented the Vehicle for warranty repairs pursuant to Ford's warranty. *See* FAC, ECF No. 23, ¶¶ 8-10 (alleging that "Ford gave Plaintiffs an express written warranty" covering the vehicle for up to 5 years or 60,000 miles, and that during this period the Vehicle developed nonconforming defects). While Ford quibbles that it has no records of servicing the Vehicle, Mot., ECF No. 24, 6 n 2., at the pleadings stage, the Court "accept[s] as true facts alleged and draw[s] inferences from them in the light most favorable to the plaintiff." *Stacy*, 609 F.3d at 1035.

Applying that standard, the Court **DENIES** Ford's Motion to Dismiss Plaintiffs' First Claim for Relief alleging a violation of Section 1793.2(d)(1).

### B.      Violation of California Civil Code Section 1793.2(b)

Plaintiffs' Second Claim for Relief alleges Defendants violated Section 1793.2(b) by failing to repair defects covered by warranty within thirty days. FAC, ECF No. 23, ¶¶ 20-32. Ford argues that based on the FAC alone it did not have the required thirty days to repair the Vehicle. Reply, ECF No. 27, 4-5. Here, the Court agrees with Ford.

Section 1793.2(b) requires that when goods must be serviced or repaired "because they do not conform with the applicable express warranties[,] . . . the goods shall be serviced or repaired to conform to the applicable warranties within 30 days." Cal. Civ. Code § 1793.2(b). Plaintiffs allege they brought the Vehicle to CarMax on September 25, 2020, and on October 12, 2020, CarMax's authorized repair facility took the Vehicle to a Ford dealership. FAC, ECF No. 23, ¶¶ 25-26. At that point, the thirty-day clock began ticking for Ford. However, Plaintiffs allege they received the Vehicle back from Ford about eight days later. *See id.* (alleging they did not have possession of the Vehicle for a total of 20-25 days during this period). Plaintiffs allege they later brought the Vehicle in again for another fourteen days. *Id.* at ¶ 27.

Even assuming the truth of these allegations, Plaintiffs only allege Ford had twenty-two total days to repair the Vehicle. Accordingly, they cannot allege a Section 1793.2(b) claim against Ford because Ford did not have the statutorily required thirty days to repair. In this instance, any amendment would be futile, and therefore the Court

6

1   **GRANTS** Ford's Motion to Dismiss the Second Claim for Relief against it *with*

2   *prejudice.*

3       **C.   Violation of California Civil Code Sections 1791.1; 1794; 1795.5**

4          Plaintiffs' Third Claim for Relief alleges Defendants violated Section 1791.1,

5   California's implied warranty of merchantability. FAC, ECF No. 23, ¶¶ 33-43. Ford

6   again argues that to the extent this claim is brought against Ford, it fails as a matter of

7   law because the Vehicle was purchased used, and according to Ford, the manufacturer is

8   not liable for defects in used products. Mot., ECF No. 24, 7-8 (citing *Goldstein v.*

9   *General Motors LLC*, 445 F. Supp. 3d 1000, 1018 (S.D. Cal. 2020)).

10          Plaintiffs contend Section 1795.5(c) confers "an implied warranty of

11   merchantability and implied warranty of fitness" that runs "coextensively with [Ford's]

12   express warranty." Opp'n, ECF No. 26, 6. Not so. Section 1795.5 imposes an

13   obligation on "distributor[s] or retail seller[s]" of "used consumer goods." Section

14   1795.5(a). It does not impose an obligation on manufacturers. *See id.*; *see also*

15   *Goldstein*, 445 F. Supp. 3d at 1018 (finding that while Section 1791.1 extends to used

16   goods, its obligations only cover the distributor or retailer seller making the express

17   warranties, not the original manufacturer, distributor, or a seller not expressly making

18   those warranties) (citing Cal. Civ. Code § 1795.5(a)). Accordingly, "[c]ourts routinely

19   dismiss implied warranty claims for used cars that are directed at the manufacturer." *Id.*

20   (citations omitted).

21          The allegation that the Vehicle was covered by Ford's original express warranty

22   does not change the analysis. For purposes of express warranties, a "new motor vehicle"

23   includes a "motor vehicle sold with a manufacturer's new car warranty," *see* Cal. Civ.

24   Code ¶ 1793.22(e)(2), but that definition does not extend to implied warranties. Thus,

25   while Ford may be liable for breach of an express warranty pursuant to Section

26   1795.2(d), the same cannot be said about breach of an implied warranty pursuant to

27   Section 1795.5.

28          Plaintiffs have already been given guidance and an opportunity to amend this claim

against Ford but have failed to do so.  Accordingly, the Court **GRANTS** Ford's Motion to Dismiss the Third Claim for Relief against it *with prejudice.*

> **D.  Violation of California Business & Professions Code Section 17200,** *et seq.*

Finally, Plaintiffs' Fourth Claim for Relief alleges Ford violated the UCL through the statutory breaches alleged in their first three claims.  FAC, ECF No. 23, ¶¶ 44-47.

In its previous Order, the Court noted that "remedies for violation of the UCL are limited to injunctive relief and restitution." ECF No. 22, 13 (citing *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 660 n.3 (9th Cir. 2020); *Cortez v. Purolater Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173 (2000).  The Court also noted that, in light of the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), a party seeking equitable relief must plead the unavailability or inadequacy of monetary damages to proceed in federal court.  Order, ECF No. 22, 14 n. 5.  Despite this warning, Plaintiffs made no attempt to explain how money damages would be inadequate or unavailable here.

Plaintiffs' argument that there is an "intra-circuit split on whether UCL claims at the pleading stage should be dismissed when the UCL claims are based on the same facts as other claims with adequate remedies" is unavailing.  Opp'n, ECF No. 26, 9.  First, each case on which Plaintiffs rely predates the Ninth Circuit's decision in *Sonner*.  *See id.* (citing cases from 2017, 2018, and 2019).  Second, to the extent any "intra-circuit split" ever existed, *Sonner* has clearly resolved such a split on similar facts.  There, the Ninth Circuit held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under [the UCL]."  *Sonner*, 971 F.3d at 837.  "Under these principles, [a plaintiff] must establish she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL."  *Id.* at 844; *see also Guzman v. Polaris Industries Inc.*, Case No. 8:19-cv-1543-FLA, 2021 WL 2021454, at *11 (C.D. Cal. May 12, 2021) (relying on *Sonner* to grant summary judgment where there were no allegations of inadequate damages) and *Shay v. Apple Inc.*, Case No. 20-cv-

1629-GPC, 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021) (applying *Sonner* to dismiss a UCL claim where the plaintiff did not allege she had an inadequate remedy at law). Plaintiffs have made no such allegations that money damages would be an inadequate remedy in this case.

Accordingly, Court **GRANTS** Defendants' motions to dismiss Plaintiffs' Fourth Claim for Relief for violations of California's UCL *with prejudice*.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant Ford's Motion to Dismiss is **GRANTED-IN-PART** as follows:

1.    Ford will remain as a named defendant in the First Claim for Relief only.

2.    Ford is dismissed *with prejudice* as a named defendant from Plaintiff's Second, Third, and Fourth Claims for Relief in the FAC.

**IT IS SO ORDERED.**

Dated: July 2️, 2021

**HON. ROGER T. BENITEZ**
United States District Judge